State ex rel. Broussard vs. Justice of the Peace.

## No. 9983.

### THE STATE EX REL. T. BROUSSARD VS. A. KOENIG, JUSTICE OF THE PEACE, FOURTH WARD OF LAFAYETTE PARISH.

*Certiorari* can only be resorted to when proceedings are absolutely null.

It is only when, upon examination of the record, the proceedings appear to be null and void, that they should be avoided and the respondent directed to try them anew, in conformity with the provisions of the law.

APPLICATION for certiorari.

*C. Girard* for the Relator.

The opinion of the Court was delivered by

WATKINS, J. Relator claims a *certiorari* upon the following grounds, viz:

1. That in the suit of T. Broussard vs. Gastine Herpin, in the respondent's court, he obtained judgment against the defendant for $2 50, and against his (relator's) protest, and, ostensibly, upon defendant's affidavit, the respondent granted a new trial, when, in point of fact, no such affidavit had been made, and respondent's act was arbitrary and in gross violation of his (relator's) rights.

2. That, on the second trial, respondent associated with him Sidney Greig, a justice of the peace of an adjoining ward, and that the two jointly heard and determined said cause and rendered judgment therein, and that, as thus constituted, it was a court unknown to the laws of Louisiana.

3. That he presented and filed a suit in respondent's court to annul said judgment, and he declined and persistently refused to issue citation to defendant, or to permit any further steps being taken therein.

4. That the respondent and the constable of his court are demanding of him the payment of $225, as *one-half* of the amount of cost due under said judgment, notwithstanding they have never exhibited any detailed bill of their costs, but, on the contrary, have refused so to do; and without the request of any party in interest, have issued execution and seized thereunder relator's property and offered it for sale.

5. Respondent, knowing that there was no appeal from the judgment rendered, acted in the premises wilfully, arbitrarily and for the purpose of oppression, extortion and of enriching himself at his (relator's) expense; and unless these proceedings are arrested, he will perpetrate upon him a gross and irreparable injury.

He specifically denies that he ever asked or prayed for an injunction against said judgment, and avers that he never, knowingly, signed either an injunction, appearance or forthcoming bond for the surrender of the property seized on the day of sale.

He prays that a certified copy of all proceedings in that suit be brought up, examined and declared null, and the respondent be enjoined to proceed no further until this is done.

From the respondent's return and the record annexed, we gather the following facts, viz :

1. That relator instituted suit and recovered judgment as stated, and upon the written affidavit of the defendant, a new trial was granted, and the plaintiff therein (relator here) was duly notified of the time and place the second trial would occur, and that both parties were present thereat with their witnesses.

2. That on the second trial respondent requested S. Greig, a justice of the peace of the adjoining ward of the same parish, to sit with him during his deliberations in that case, "because he knew that bitter differences existed between the two neighbors who were litigating in that case," and because he desired " to do exact justice in the case," etc.

On the trial, judgment was rendered dismissing plaintiff's (relator's) suit, and against each one-half of the cost was taxed. The reasons assigned was that both parties had been found " guilty of malice and negligence."

This judgment appears to have been signed by each of the justices ; but the respondent returns that the latter took *no part in the decision* of the case, and that he alone heard and determined it and rendered judgment therein, and that Justice of the Peace Greig only *advised* with him in the premises, and signed the decree as evidencing his approval of it only.

In this respect we fail to discover any badge of nullity.

Conceding there is no express law sanctioning such a proceeding, yet it is not an unfrequent occurrence that a judge of the vicinage, exercising like jurisdiction, sits *en banc* with the judge who is engaged in the trial of the case in hand.

Though it is not usual, in such cases, that another than the trial judge should sign the decree, yet that fact, in our opinion, would not vitiate it. It might well be treated as surplusage.

3. On execution under the judgment for cost, property of relator was seized and advertised for sale, and notice of seizure was served,

but the relator demanded the right to give a forthcoming bond and retain possession until the day of sale.

The respondent returns that he executed bond and therefore failed to surrender the property, and his bond was duly forfeited. There is, in the record annexed to his return, a judgment to that effect.

He further returns that the relator, in person, prayed for an injunction against this writ and furnished the necessary bond and security. This case was fixed for trial by consent of parties, but upon their failing to put in appearance, on the day fixed for trial, same was dissolved.

Subsequently the relator sued out an injunction *in the district court* against the respondent and the constable of his court holding the *fi. fa.*, seeking to restrain further proceedings thereunder, and that same was dissolved at the March term of that court in 1887.

Respondent returns that during the pendency of that injunction a document was handed to him for filing, seeking to annul said judgment, but that he was advised and believed it to be the same in effect and purport of said pending injunction which had then only recently been served on him, and he was advised and believed that he could not do anything while same was pending.

He further returns that he was advised and believed that said action in nullity should not be placed on file in his court, because " said petition was couched in impertinent and disrespectful language," etc.

For all of said reasons he deemed it his duty to take no further action in the premises until said suit was decided.

He further represents that since that date (April, 1886), no other application has been made ; and he avers his entire willingness to receive any petition from the relator, if couched in proper and decorous language, and to act thereupon officially and to the best of his knowledge and ability.

4. The respondent avers that the *fi. fa.* only issued against the relator for the sum of $26 45, and the writ discloses that to be a fact, same being the *cost incurred by him in said suit ;* " and that it is *absolutely untrue* that he demanded any cost whatever other than such as contemplated by that suit ; and he denies that any demand for detailed bill of costs has ever been made by relator " and by him refused. On the other hand, he affirms that he has promptly furnished him with itemized bills of cost, and that he believes he has them in his possession at this time.

State ex rel. Broussard vs. Justice of the Peace.

The record annexed does not, in any degree, support the relators averment that the respondent and the constable of his court were demanding a large and *extortionate* sum as costs, without authority of, though under the color of law.

5. There is no support for the assertion that respondent have acted wilfully, arbitrarily, or with the purpose of extortion, and oppression, as alleged in relator's petition. It may be that the judgment rendered operates a great hardship on the relator; that he was entitled to judgment against the defendant, Gastine Herpin, for the amount claimed and cost; and that even the amount of costs claimed are excessive.

All of those matters are placed within the *exclusive* jurisdiction of the respondent in such a case as the instant one, and his decree is not revocable on appeal, and it can be examined by this court only in the exercise of its supervisory power. Const. art. 90.

The *certiorari* can be resorted to only when proceedings are absolutely void, and should be set aside. C. P. 857, 864, 866.

It is only when, upon examination of the record, the proceedings appear to be null and void that they should be avoided and set aside, and the respondent directed to try the case anew in conformity with the provisions of the law. C. P. 864.

The record furnishes no warrant for our interference, in this case, with the proceedings in the respondent's court. 38 Ann. 968, State ex rel. Gorch vs. Robinson, Justice of the Peace.

It is therefore ordered, adjudged and decreed that the restraining order granted be set aside, and the relator's demand be rejected at his cost.